**IN THE CIRCUIT COURT FOR ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| VALERIE WALLER, )<br>*individually and on behalf of* )<br>*all others similarly situated,* )<br>    )<br>    Plaintiffs, )<br>    )<br>v. )<br>    )<br>HENKEL CORPORATION, )<br>*and* DOES 1 through 10, )<br>    )<br>    Defendants. ) | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION PETITION**

Plaintiff Valerie Waller, individually and on behalf of all others similarly situated, hereby files this, her Class Action Petition, against Defendant Henkel Corporation and DOES 1 through 10 (collectively "Defendants") for their false, misleading, and deceptive marketing of their products constituting breach of warranty, breach of implied contract, and unjust enrichment, and violations of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

1. Defendant markets and sells consumer products, including "ALL"-branded liquid laundry detergent, packaged in 88 fl. oz. containers, and purporting to be sufficient for 58 loads of laundry (the "Product").

2. Indeed, the claim "58 LOADS" appears prominently on the front of the Product, as shown below (magnified for clarification):



a.

2



b.

3.  Although the claim "58 LOADS" is obvious to the purchasing consumer, a not-so-obvious, small, diamond-shaped mark follows the word "LOADS."

4.  The diamond-shaped mark is not a footnote, nor an asterisk; it is not something a reasonable consumer would readily identify as being a reference mark of any sort. In other words, in-and-of-itself, the diamond-shaped mark does not compel further investigation.

5.  Nonetheless, the diamond-shaped mark apparently is meant to correspond to fine-print on the backside of the container, which itself is covered in fine-print of varying sizes, all of which is difficult to read:



a.

6. Amongst the fine-print on the rear of the container is an obscure notation beginning with the same diamond-shaped-mark from the other side:

  a. 

7. The diamond-shaped-mark precedes the statement: "Contains approximately 58 loads *as measured to just below line 1*." (emphasis added).

8. "Line 1," is itself a reference to a diagram preceding the statement, which appears as follows:

  a.

9. Putting this all together – to the extent a consumer can follow the textual "clues" riddled across the Product's container – the amount of detergent in the container is only sufficient for "58 LOADS" if a "load" is a so-called "regular" load, which is *less than half* a full load (with "Bar 4" signifying a "HE full load").

10. Consequently, for the vast majority of consumers doing full loads of laundry at high efficiency ("he"), the most loads the Product provides detergent for is approximately half-as-many, or roughly just approximately 28 loads, or less.

11. In any and all instances, the Product provides detergent for nowhere close to 58 loads.

12. Representing that the Product can provide "58 LOADS," when "loads" are half or less the size of what a consumer (and Defendant) consider a "full" load, is misleading and deceptive.

13. Pursuant to the MMPA, such practice is illegal.

14. In addition, and/or in the alternative to the above, since the initial offering of the

Products, each and every container of the Products has borne a uniformly-worded label falsely claiming the Product provides for "58 Loads." That uniformly-worded false statement gives rise to additional and/or alternative claims under Missouri law.

## I.     PARTIES, JURISDICTION, AND VENUE

15.    Plaintiff Valerie Waller is a citizen and resident of St. Louis County, Missouri.

16.    Plaintiffs bring this Class Action Complaint individually and on behalf of a putative class of Missouri residents.

17.    Defendant Henkel Corporation ("Henkel") is a Germany-based foreign corporation having its principal place of business in the United States at Samford, CT. Henkel may be served through its registered agent located at 221 Bolivar St., Jefferson City, MO 65101.

18.    The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. If necessary, Plaintiff will seek leave of Court to amend the Petition to reflect the true names and capacities of the DOE Defendants when such identities become known.

19.    Defendants, directly and through their agents, have substantial contacts with, and receive substantial benefits and income from and through the State of Missouri. Defendants are the owners, manufacturers, and distributors of the Products, and the entities that created and/or authorized the false, misleading, and deceptive packaging of the Products.

20.    Venue is proper in this Court because Plaintiff was injured in this venue and lives within this venue.

21.    This asserted class action comports with Missouri Supreme Court Rule 52.08 and with R.S.Mo. § 407.025(3) of the MMPA. Plaintiffs' identities can be ascertained from Defendant's records, but are so numerous that simple joinder of all individuals is impracticable. This action raises questions

of law and fact common among Plaintiffs. The claims of lead Plaintiff is typical of all Plaintiffs' claims. Named Plaintiff will fairly and adequately protect all Plaintiffs' interests, and is represented by attorneys qualified to pursue this action. More specifically:

22. <u>Class definitions</u>: Plaintiffs brings this action on behalf of herself and a class of similarly-situated persons preliminarily-defined as follows: All Missouri citizens who purchased the Products[1] within the Class Period, in the State of Missouri. The Class Period begins five years prior to the date of the filing of this Petition, and ceases upon the date of the filing of this Petition. Excluded from the Class and Subclass are: (a) any judges presiding over this action and members of their staffs and families; (b) the Defendants and their subsidiaries, parents, successors, and predecessors; any entity in which the Defendants or their parents have a controlling interest; and the Defendants' current or former officers and directors; (c) employees (i) who have or had a managerial responsibility on behalf of the organization, (ii) whose act or omission in connection with this matter may be imputed to the organization for liability purposes, or (iii) whose statements may constitute an admission on the part of the Defendants; (d) persons who properly execute and file a timely request for exclusion from the class; (e) the attorneys working on the Plaintiffs' claims; (f) the legal representatives, successors, or assigns of any such excluded persons; and (g) any individual who assisted or supported the wrongful acts delineated herein.

23. <u>Numerosity</u>: Upon information and belief, the Class and Subclasses include at least hundreds of individuals, making their individual joinder impracticable. Although the exact number of Class members and their addresses are presently unknown to Plaintiff, they are ascertainable from Defendants' records.

24. <u>Typicality</u>: Plaintiffs' claims are typical of those of the Class because all Plaintiffs were injured by the Defendants' uniform wrongful conduct, specifically, using misleading and deceptive

---

[1] As that term and label is defined herein.

marketing, and engaging in an unfair practice by offering and selling the Products to Plaintiffs, using the false claims.

25. <u>Adequacy</u>: Plaintiffs are adequate representatives of the Class because Plaintiff's interests do not conflict with the interests of the Class members Plaintiff seeks to represent, Plaintiff has retained competent and experienced counsel, and Plaintiff intends to prosecute this action vigorously. The interests of the Class will be protected fairly and adequately by Plaintiff and his counsel.

26. <u>Commonality</u>: Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual members, such as: (a) whether the Defendant used deceptive or misleading marketing and advertising in selling the Products; (b) whether and to what extent the Class members were injured by Defendant's illegal conduct; (c) whether the Class members are entitled to compensatory damages; (d) whether the Class members are entitled to declaratory relief; and (e) whether the Class members are entitled to injunctive relief.

27. <u>Superiority</u>: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by the Defendant's wrongful conduct. Thus, it would be extremely difficult for the individual Class members to obtain effective relief. A class action presents far fewer management difficulties and provides the benefits of a single adjudication, including economies of time, effort, and expense, and uniformity of decisions.

**PLAINTIFF'S CLAIMS**

28. For all the aforementioned reasons, the Product's "58 LOADS" statement is false, misleading and deceptive, all in violation of the Missouri Merchandising Practice Act, and various other Missouri laws.

29. Average and reasonable consumers such as Plaintiffs generally do not read the fine print

on the rear of a package when purchasing a Product.

30. The average consumer spends less than 20 second making any individual in-store purchasing decision.[2] That decision hinges almost entirely on the product's front labeling because the average consumer does not have the time – while presumably on a schedule and surrounded by multiple other consumers – to inspect the small font on the rear of a Product to determine whether it tends to support and/or refute a prominent claim, such as "58 loads."

31. Based on the "58 loads" claims on the front of the Product, a reasonable consumer would believe that the Product provides enough detergent for 58 loads of laundry. This is true despite what the small-print on the rear may say.

32. Consumers' ability to interpret label information on the back of products is relatively poor; thus, the prominent labels typically featured on the front packaging are particularly important to a consumer's purchasing decision.[3]

33. Plaintiffs and other consumers purchased the Products due to their belief that the Product would provide enough detergent for approximately 58 loads of laundry.

34. Plaintiffs and the Class made their purchasing decisions in reliance upon Defendant's advertised claims that that Products provide "58 LOADS."

35. Plaintiffs and the Class reasonably and detrimentally relied upon the Products' front labels in this respect.

36. Plaintiffs and the Class would not have purchased the Products had they known that the

---

[2] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN (Jan. 13, 2015), https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-window/ (citing *Shopping Takes Only Seconds… In-Store and Online*, EHRENBERG-BASS INSTITUTE OF MARKETING SCIENCE (2015)) (last visited August 24, 2022).

[3] Lisa M. Soederberg Miller and Diana L. Cassady, *The Effects of Nutrition Knowledge of Food Label Use: A Review of the Literature,* 92 APPETITE 207 (2015); A B Marietta, et al., *Knowledge, Attitudes, and Behaviors of College Students Regarding the 1990 Nutrition Labeling Education Act Food Labels,* 99 J. Am. Diet Ass'n 445 (1999).

Products do not provide anywhere close to 58 full loads.

37. Defendant's conduct threatens Missouri consumers by using false, deceptive, and misleading labels. Defendant's conduct also threatens other companies, large and small, who "play by the rules." Defendant's conduct stifles competition, has a negative impact on the marketplace, and reduces consumer choice.

38. There is no practical reason for the false or misleading labeling and advertising of the Products, other than to mislead consumers as to the actual amount of the Product being purchased by consumers, while simultaneously providing Defendant with a financial windfall.

*Allegations Relating to All Plaintiffs*

39. As noted, *supra,* since the initial offering of the Products, the containers on the front packaging of all of the Products has borne one or more uniformly-worded labels falsely claiming the Product provides enough detergent for "58 LOADS" (hereinafter "False Claims").

40. In reality, for all the reasons set forth *supra,* a reasonable consumer would find that the False Claims are false, misleading, unfair, and/or deceptive.

41. Defendant, as developer, manufacturer, and exclusive seller and distributor of the Products, has been aware since the Products' inception, that the False Claims are in fact false.

42. Indeed, Defendant undoubtedly did its own investigation of the Products and its marketplace prior to it being offered for sale and, of necessity, such investigation would have made Defendant aware that the False Claims are in fact false.

43. Despite this, Defendants purposely made the False Claims in order to induce the false belief in consumers that they were purchasing a Product that would be enough for 58 loads of laundry.

44. Plaintiff and the class members purchased the Products without being aware that the Products do not, in fact, provide enough detergent for anywhere near 58 loads of laundry.

45. Defendant possessed specialized knowledge regarding the data and information

concerning the amount of the Products and its claims.

46. In fact, in regard to the False Claims, the Product is a credence good because its purported "58 LOADS" label cannot be independently verified by the consumer at the time of purchase.

47. In purchasing the Products, Plaintiff and the class members had no choice but to necessarily and justifiably rely upon the False Claims as accurate.

48. Had Plaintiffs known that the False Claims were false, Plaintiffs would not have purchased the Products or would not have paid as much for the Products.

49. If, at some point in the future, the Product was improved to provide for "58 LOADS" and/or otherwise be accurately labeled, Plaintiff intends to and will then purchase the Products again.

50. As the direct and proximate result of the False Claims, Plaintiff and the class members have suffered economic injury by being deprived of the benefit of the bargain they were promised by Defendant.

51. By marketing, selling and distributing the Product to purchasers in Missouri and elsewhere, Defendant made actionable statements that the Products provided for "58 LOADS."

52. Defendant engaged in the above-described actionable statements, omissions and concealments with knowledge that the representations were false and/or misleading, and with the intent that consumers rely upon such concealment, suppression and omissions.

53. Alternatively, Defendant was reckless in not knowing that the False Claims were false and misleading at the time they were made.

54. As the distributor, marketer, producer, manufacturer, and seller of the Products, Defendant possessed specialized knowledge regarding the data and information concerning the amount of Product which the Plaintiff and the class members could not and did not review.

*Facts Particular to Named Plaintiff*

55. In or around January of 2023, Plaintiff Waller purchased the Product from a third-party

retailer, Walgreens, while in Missouri.

56. Due to the claims on the packaging, Plaintiff falsely believed she was purchasing a product that would provide enough detergent for 58 full loads of laundry.

57. Plaintiff thereafter purchased the Product. Plaintiff purchased the Product primarily for her personal, family and household use.

58. At the time Plaintiff purchased the Product, Plaintiff was unaware of the falsity of the Products' claims.

59. Plaintiff discovered that such claims were false shortly after purchasing and using the Products.

60. If Plaintiff had been aware of the falsity and misleading nature of Defendant's claims regarding the Product, Plaintiff would not have bought the Product.

61. When Plaintiff purchased the Product, Plaintiff was injured by Defendant's illegally deceptive, false, and misleading conduct in marketing and selling the Product.

62. Specifically, Plaintiff suffered an ascertainable loss because Plaintiff did not receive the expected benefit of the bargain.

63. When Plaintiff was purchasing the Product, due to the false claims upon the Product, Plaintiff believed that Plaintiff was receiving a product that provided for 58 loads of laundry.

64. The Product was not what it was purported to be. Plaintiff did not receive the value of what Plaintiff bargained for; instead Plaintiff received a product that did not live up to one of its most-prominently advertised benefit – the usable amount of Product.

65. Consequently, Plaintiff was damaged in the amount of the difference between the cost paid for the Product as represented – as one that provided enough detergent for "58 loads" and the actual value of the Products. Said difference for most Plaintiffs would therefore be a percentage of the price paid for the Product.

11

Electronically Filed - St Louis County - March 15, 2023 - 06:11 PM

66. Plaintiff would purchase the Products again if they were honestly-labeled in respect to the amount of full loads, but faces an imminent threat of harm because she will not be able to rely on Defendant's labels in the future (without relief) and will thus be unable to purchase the Products.

67. Although the aforementioned facts apply to named Plaintiff, for purposes of the proposed Class, all that is relevant is that Plaintiff and the class members purchased the Products at a time within the Class Period while in Missouri, Maine, and/or another one of the Consumer Protection States.

## CAUSES OF ACTION

### COUNTS RELATING TO THE MISSOURI AND CONSUMER PROTECTION SUBCLASSES
### COUNT ONE: BREACH OF WARRANTY

68. Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Class Action Petition.

69. Defendant sold the Product in its regular course of business. Plaintiff and the class members purchased the Product.

70. Defendant made promises and representations in an express warranty provided to all consumers, namely the False Claims.

71. The False Claims became the basis of the bargain between the Defendant and Plaintiff and each class member.

72. Defendant gave these express warranties to Plaintiff and each class member in written form on the labels of the Product.

73. Defendant's written affirmations of fact, promises, and/or descriptions as alleged are each a written warranty under Missouri law.

74. Defendant breached the warranty because the False Claims were false.

75. The False Claims were false when the sales took place and were undiscoverable to Plaintiff and the class members at the time of purchase.

76. All conditions precedent to seeking liability under this claim for breach of express warranty have been performed by or on behalf of Plaintiff and the class in terms of paying for the Product.

77. Defendant had actual notice of the false labeling information and to date has taken no action to remedy its breach of express and implied warranty.

78. Specifically, on February 1, 2023, counsel for Plaintiff provided written NOTICE of Defendant's breach of express warranty to Defendant. Defendant has taken no action to remedy its breach of express and implied warranty.

79. In addition, Defendant previously knew or should have known of the falsity of the False Claims on the Product due to, inter alia, Defendant's testing and knowledge of the Product.

80. Defendant has nonetheless refused to remedy such breaches.

81. By placing the Product in the stream of commerce, and by operation of law and the facts alleged herein, Defendants also impliedly warrantied to Plaintiff and the class members that the Products were accurately labeled in conformance with the law.

82. Defendant's breaches of warranty have caused Plaintiffs and class members to suffer injuries, paying for falsely labeled products, and entering into transactions they otherwise would not have entered into for the consideration paid. As a direct and proximate result of Defendant's breaches of warranty, Plaintiff and class members have suffered damages and continue to suffer damages.

**COUNT TWO: BREACH OF IMPLIED CONTRACT UNDER MISSOURI LAW AND MAINE LAW**

83. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

84. By operation of law, there existed an implied contract for the sale of the Product between Defendant and Plaintiff and each class member who purchased the Product.

85. By operation of Missouri law, there existed an implied duty of good faith and fair dealing in each such contract.

86. By the acts alleged herein, Defendant has violated that duty of good faith and fair dealing, thereby breaching the implied contract between Defendant and each class member.

87. As a result of that breach, Plaintiff and each class member suffered damages.

**COUNT THREE: UNJUST ENRICHMENT UNDER MISSOURI LAW**

88. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

89. Plaintiffs plead their claim for relief in the alternative to the contract claims set forth above.

90. Plaintiff and the class members have conferred substantial benefits on Defendant by purchasing the Product, and Defendant has knowingly and willfully accepted and enjoyed those benefits.

91. Defendant either knew or should have known that the payments rendered by the payments rendered by Plaintiff and the class members were given and received with the expectation that the Product would be as represented and warranted. For Defendant to retain the benefit of the payments under these circumstances is inequitable.

92. Through deliberate misrepresentations or omissions in connection with the advertising, marketing, promotion, and sale of the Products, including the False Claims, Defendant reaped benefits, which result in Defendant wrongfully receiving profits, the unjust portion of which should be returned to the class members.

**COUNT FOUR: VIOLATION OF THE MMPA**

93. Plaintiff hereby incorporates by reference and re-alleges each allegation set forth in each preceding paragraph of this Petition, as though fully set forth herein.

94. Defendant's acts complained of herein occurred in and emanated from the State of

Electronically Filed - St Louis County - March 15, 2023 - 06:11 PM

Missouri and/or one of the Consumer Protection States.

95. Plaintiff and all members of the Class are "persons" and the Product is "merchandise" as those terms are defined under the MMPA.

96. As set out in this Petition, Defendant's marketing of the Product constitutes deception, false pretense, misrepresentation, unfair practice, or, at a minimum, the concealment, suppression, or omission of a material fact in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. chap. 407 ("MMPA").

97. As a result of Defendant's actions, consumers, including Plaintiff, were misled or deceived that the Product they were purchasing would provide enough for 58 loads of laundry.

98. Defendant's deceptive acts caused Plaintiff and the Class Members an ascertainable loss within the meaning of the MMPA, such loss being a small percentage of the price paid for the Product.

99. Plaintiffs have been forced to hire attorneys to enforce their rights under the MMPA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for an order certifying this action as Missouri class action, and appointing Plaintiff Waller as Class representative and her counsel as class and/or subclass counsel. Plaintiff requests that this court find that the Defendant is liable pursuant to the aforementioned common law claims; and/or violated the MMPA, and award Plaintiffs compensatory damages, and such further relief as the Court deems just, including attorney's fees composed of a suitable percentage of the class recovery.

Respectfully submitted,

**DANIEL F. HARVATH, ESQ.**

By: /s/ *Daniel F. Harvath*
Daniel F. Harvath, #57599MO
**HARVATH LAW GROUP, LLC**
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com
*Attorney for Plaintiff*

Electronically Filed - St Louis County - March 15, 2023 - 06:11 PM